### In re Daniel J. MILES, Debtor.

### James C. Cifelli, Chapter 7 Trustee, Plaintiff,

### v.

### Blue Star Residential, LLC, Defendant.

### Bankruptcy No. 09–92601–MHM. Adversary No. 11–5704.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Aug. 17, 2012.

---

Christopher D. Phillips, James C. Cifelli, Lamberth, Cifelli, Stokes, Ellis & Nason, Atlanta, GA, for Plaintiff.

A. Todd Merolla, Merolla & Gold, LLP, Atlanta, GA, for Defendant.

## ORDER DENYING MOTION TO DISMISS

MARGARET H. MURPHY, Bankruptcy Judge.

This adversary proceeding is before the Court on Defendant's *Motion to Dismiss*. Plaintiff, the Chapter 7 Trustee ("Trustee"), filed a complaint seeking to avoid an allegedly fraudulent transfer from Debtor to Defendant Blue Star Residential, LLC ("Blue Star") pursuant to 11 U.S.C. §§ 548 and 550. Defendant argues, relying on the recent decision of the Supreme Court in *Stern v. Marshall*, —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), that such an avoidance action cannot constitutionally be decided in this court because it is a proceeding adjudicable only by an Article III Court. Thus, Defendant argues, the complaint against it must be dismissed. For the reasons set forth below, the Motion is denied.

## I. STATEMENT OF FACTS

These proceedings stem from an involuntary Chapter 7 petition filed against Debtor December 9, 2009. Debtor moved to convert the case to Chapter 11, which relief was granted December 17, 2009; on Trustee's motion, the case was re-converted to Chapter 7 June 1, 2010.

Trustee's complaint in this adversary proceeding challenges three transfers made by Debtor to Defendant Blue Star[1] in August and September 2009. The allegedly fraudulent transfers totaled $400,000. Trustee contends that Debtor made the transfers to place assets beyond the reach of his creditors so that Debtor might draw on the funds in the event of a bankruptcy. Trustee alleges that the funds transferred to Blue Star were used to pay Debtor a salary by Blue Star and not to fund ongoing operations, and that the equity Debtor received by Blue Star was not proportionate to Debtor's investment. Trustee therefore contends that the transfers are avoidable and recoverable under 11 U.S.C. §§ 548 and 550.

Blue Star filed its *Motion to Dismiss* January 17, 2012, filed no proof of claim in Debtor's estate, and states that it will demand a jury trial on the issues raised by the Complaint.

## II. CONCLUSIONS OF LAW.

The judicial power of the United States is vested in the Supreme Court and in federal courts created by Congress, whose judges possess life tenure during good behavior. U.S. Const. Art. III, § 1. Because the Bankruptcy court is not an inferior court within the meaning of Article III, its judges may not constitutionally exercise the judicial power. *Stern v. Marshall*, —— U.S. ——, 131 S.Ct. 2594, 2601, 180 L.Ed.2d 475 (2011). Thus, in *Stern*, the Supreme Court concluded the bankruptcy court had no constitutional power to enter final judgment in a counterclaim for tortious interference with a gift filed in a response to a defamation claim against a debtor's estate: No "public right" was at issue in the counterclaim; it would not necessarily be resolved by adjudicating the claim against the estate; and it was essentially a state law claim aimed at augmenting the estate. *Id.* at 2611, 2614–16. *Stern* has been characterized as a "narrow" decision dealing only with the authority of the bankruptcy court to enter final judgment in state law counterclaims

---

1. On Schedule B filed January 29, 1010, Debtor lists a 20% ownership interest in Blue Star.

against a creditor, resolution of which is unnecessary to rule on the proof of claim at issue in the bankruptcy case. "The narrow holding in *Stern* ... does not impact a bankruptcy court's ability to enter a final judgment in any other type of core proceeding authorized under 28 U.S.C. § 157(b)(2)." *Peacock v. Ford Motor Company, LLC,* 455 B.R. 810, 812 (Bankr. M.D.Fla.2011). Other authorities suggest *Stern* applies to a broader range of claims seeking essentially "to augment the bankruptcy estate," which, as "private matters," are reserved for the Article III courts. *Ortiz v. Aurora Health Care, Inc.,* 665 F.3d 906, 914 (7th Cir.2011).

The bankruptcy court is given statutory authority to hear cases by 28 U.S.C. § 157. Section § 157(b) allows the bankruptcy court to hear and determine core proceedings arising under Title 11 of the United States Code, or arising in a case under Title 11. If a proceeding is not core but only "otherwise related" to a case under Title 11, § 157(c)(1) permits the bankruptcy court to submit proposed findings of fact and conclusions of law to the district court. Proceedings to determine, avoid or recover fraudulent conveyances are core proceedings pursuant to § 157(b)(2)(H). The statutory authority to hear a case, however, is a separate issue from the bankruptcy court's constitutional power. *Stern,* 131 S.Ct. at 2607. The proceeding at issue in *Stern* was a core proceeding under 28 U.S.C. § 157(b)(2)(C), but the bankruptcy court remained without constitutional power to decide the case. *Id.; see also Customized Distribution, LLC v. Coastal Bank and Trust (In Re Lee's Famous Recipes, Inc.),* No. 11–5482, 2011 WL 7068916, at *2 (Bankr.N.D.Ga. Dec. 12, 2011) (J. Brizendine).

 A person who has not filed a claim in a bankruptcy proceeding has the right to a jury trial under the Seventh Amendment when sued by the trustee to recover an allegedly fraudulent transfer. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 36, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). A bankruptcy judge may conduct a jury trial (where the district court rules permit) with the express consent of all parties. 28 U.S.C. § 157(e). In the Northern District of Georgia, where a timely jury demand is filed and the parties do not consent to jury trial before a bankruptcy judge, an adversary proceeding will be transferred to the District Court when the case is ready for trial. Bankr.Local Rule 9015–3(a) (N.D.Ga.). The Bankruptcy court rules on all pre-trial motions. *Id.*

### III. DISCUSSION

 Defendant contends the bankruptcy court is without constitutional power to finally determine if the 2009 investments of Debtor in Defendant were fraudulent, and if so, if the underlying transfers are avoidable and recoverable. Defendant argues that pursuant to the decision in *Granfinanciera,* 492 U.S. at 35, 109 S.Ct. 2782 a fraudulent conveyance action is "quintessentially" the kind of claim that requires determination by an Article III court and cannot be constitutionally decided in the bankruptcy court. Defendant cites the decisions of various courts that have reached this conclusion. *See e.g. Meoli v. The Huntington National Bank (In re Teleservices Group, Inc.),* 456 B.R. 318 (Bankr.W.D.Mich.2011); *Paloian v. Amer. Express Co. (In re Canopy Financial, Inc.),* 464 B.R. 770 (N.D.Ill.2011); *Heller Ehrman LLP v. Arnold Porter LLP,* 464 B.R. 348 (N.D.Cal.2011). Defendant's argument, and the argument of much of its supporting case law, is effectively that *Granfinanciera* has made clear that fraudulent conveyance suits are exercises of the Article III judicial power, as "quintessentially suits at common law that

more nearly resemble state law contract claims ... than they do creditors' claims to a *pro rata* share of the bankruptcy *res.*" *Granfinanciera,* 492 U.S. at 35, 109 S.Ct. 2782; *Canopy Financial,* 464 B.R. at 773; *Heller Ehrman,* 464 B.R. at 353–54. *Stern* held that only Article III courts may enter final judgment in actions that are quintessentially suits at common law. *Canopy Financial,* 464 B.R. at 773; *Heller Ehrman,* 464 B.R. at 354. Defendant argues that given the Supreme Court's prior holding in *Granfinanciera,* it follows necessarily from *Stern* that fraudulent conveyance claims can no longer be decided in the bankruptcy court.

Yet Defendant's interpretation of *Stern* fails to account for the repeated emphasis of the Supreme Court that the decision was "narrow" and "does not change all that much." 131 S.Ct. at 2620. *Stern* should not "meaningfully change ... the division of labor in the [bankruptcy statute]." *Id.* "[T]he adjudication of fraudulent transfer and avoidance actions is a basic feature of that division of labor." *Fox v. Picard (In re Madoff),* 2012 WL 990829, at *12 n. 5 (S.D.N.Y. March 26, 2012). *Stern,* if in fact it removes such matters from the purview of the bankruptcy courts, was not dealing with only a "slight encroachment" on the territory of the Article III courts. 131 S.Ct. at 2620 (*quoting Reid v. Covert,* 354 U.S. 1, 39, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957)). As the Court itself in *Stern* presented its holding as being "the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction," *id.,* a narrow view of *Stern* is preferable, not taking out of the purview of the bankruptcy court claims of a type that routinely fall before it. "To broadly apply *Stern's* holding is to create a mountain out of a mole hill." *In Re USDigital, Inc.,* 461 B.R. 276, 292 (Bankr.D.Del.2011).

Although Defendant cites several courts who disagree with this narrow approach to *Stern,* this narrow view also has found support in case law. *See e.g. Zazzali v. 1031 Exchange Group (In re DBSI, Inc.),* 467 B.R. 767 (Bankr.D.Del.2012); *Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.),* 466 B.R. 626 (Bankr. D.Del.2012); *Official Committee of Unsecured Creditors of Appalachian Fuels, LLC v. Energy Coal Resources, Inc. (In re Appalachian Fuels, LLC),* 472 B.R. 731 (E.D.Ky.2012). *In re Madoff,* 2012 WL 990829 (S.D.N.Y. March 26, 2012). The Bankruptcy Court for the District of Delaware has repeatedly refused to apply *Stern* to a fraudulent conveyance claim on the basis that the holding of *Stern* is applicable only to a state law counterclaim by the bankruptcy estate. *In re DBSI, Inc.,* 467 B.R. at 773. Other courts have relied on the language in *Stern,* noting the Supreme Court expressed its "intention to limit the application of its holding." *See e.g. Appalachian Fuels,* 472 B.R. at 739.

Additional reasons have been found for concluding that *Stern v. Marshall* does not abrogate the power of the bankruptcy court to finally decide fraudulent conveyance actions. A fraudulent conveyance action is distinguishable from the type of state common law counterclaim that was at issue in *Stern.* A debtor's common law counterclaim exists independent of the bankruptcy case and independent of the Bankruptcy Code; even following dismissal of a bankruptcy case, the debtor could bring his action in the state courts. Trustee's power under § 548 to bring fraudulent conveyance actions is explicitly found in the Bankruptcy Code; absent Title 11, *no* court would have any basis to hear a Chapter 7 trustee's claim for relief to avoid and recover a fraudulent transfer. *Appalachian Fuels,* 472 B.R. at 741. Nor does the holding in *Granfinanciera* compel the conclusion that the decision of fraudulent

conveyance claims is beyond the constitutional power of the bankruptcy court. *Granfinanciera* addressed only the question of the Seventh Amendment jury trial rights in fraudulent transfers actions. *Id.* A fraudulent action may be sufficiently similar to a state common law action to support a conclusion that a defendant has the right to a jury trial—as the Court in *Granfinanciera* decided—without having the kind of state law *basis* that troubled the Supreme Court in *Stern v. Marshall.* For twenty years following *Granfinanciera,* the authority of bankruptcy courts to enter final judgment in fraudulent conveyance actions (in which defendants did not assert a right to a jury trial) was unchallenged. *Appalachian Fuels,* 472 B.R. at 741. *Stern v. Marshall,* a narrow decision addressing a different type of claim, does not require reconsideration of this assumption.

█ Nevertheless, even if *Stern v. Marshall* prohibits the bankruptcy court from entering final judgment on Trustee's fraudulent transfer proceeding, the bankruptcy court is permitted to present findings of fact and conclusions of law to the district court. Defendant argues that no such practice is authorized in this type of adversary proceeding, contending that the authority of the bankruptcy court to submit findings of fact and conclusions of law to the District Court is statutory and applies only where enumerated—i.e. in non-core proceedings "related to" to the bankruptcy. 28 U.S.C. § 157(c)(1). Defendant argues that, as this case is a core matter, no such power exists; and that because *Stern* would prevent entry of a final judgment in this proceeding except by an Article III court, the bankruptcy court is left without any proper way to dispose of the case, and it must, therefore, be dismissed.

As Trustee notes, however, the idea that *Stern v. Marshall* has left a category of claims—core proceedings not subject to constitutional decision by the bankruptcy court—in "limbo" and fit only for dismissal, has been generally rejected. *See Samson v. Blixseth (In Re Blixseth),* No. 10–00088, 2011 WL 3274042, at *12 (Bankr. D.Mont. Aug. 1, 2011) (*amended by* 463 B.R. 896, 906 (Bankr.D.Mont.2012)). Defendant is imprecise in its description of *Stern v. Marshall,* characterized as holding that "[the] Supreme Court held that a bankruptcy court, not being an Article III court under the Constitution, could not *adjudicate* certain kinds of judicial proceedings" and of subsequent case law holding § 157(b) "to be unconstitutional," *see e.g. Canopy Financial,* 464 B.R. at 773; *Heller Ehrman,* 464 B.R. at 353–54. In *Stern,* Chief Justice Roberts explicitly described the holding of the Supreme Court as bankruptcy courts lacking authority to "resolve and enter final judgment" only on a state law counterclaim. 131 S.Ct. at 2610. The Chief Justice noted that "Pierce has not argued that the bankruptcy courts are barred from hearing all counterclaims or proposing findings of fact or conclusions of law on those matters, but rather that it must be the district court that finally decides them." *Id.* at 2620 (internal quotations omitted). Even more so than with its contention that *Stern* must apply to fraudulent conveyance claims, the interpretation of *Stern* that Defendant asserts here would belie the conclusion of the Supreme Court itself that "the division of labor in the current statute" is not "meaningfully change[d]." *Id.*

The case law cited by Defendant similarly fails to establish that it is entitled to dismissal. Even those courts which hold that fraudulent conveyance claims must be finally decided by the Article III courts consistently conclude that bankruptcy courts may nonetheless hear such proceedings, and make proposed findings of fact

and conclusions of law to present to the district courts. *See e.g. In re Teleservices Group, Inc.*, 456 B.R. at 318; *Canopy Financial*, 464 B.R. at 770; *Heller Ehrman LLP*, 464 B.R. at 348. In fact, the "limbo" or "no-man's land" argument made by Defendant is explicitly addressed, and dismissed, in many of these authorities. Thus in *Heller Ehrman*, the District Court for the Northern District of California observed that Title 28 nowhere prohibits the making of findings of fact and conclusions of law in non-core proceedings, and that district courts generally may delegate a significant amount of authority (presumably including the authority to make such findings) to bankruptcy courts. 464 B.R. at 355. No "statutory rewrite" is necessary to avoid the absurd result that the bankruptcy court must dismiss a core proceeding because it cannot make findings of fact and conclusions of law as it could in a non-core proceeding. *Id.*

Defendant cites to a case from this Court as authority for the proposition that this proceeding must be dismissed. *See Whitaker v. EMC Mortgage Corp.*, 09–9000, 2011 WL 4790755 (Bankr.N.D.Ga. Sept. 30, 2011) (J. Murphy). In *Whitaker*, a defendant obtained summary judgment against a *pro se* plaintiff seeking rescission of a loan modification and damages. *Whitaker* is distinguishable from this case. The *Whitaker* defendant was entitled to summary judgment on the merits of his case. The plaintiff had presented scant evidence to support her claim that defendant fraudulently induced her to enter into the loan modification. In new arguments raised immediately prior to the hearing, the plaintiff sought to raise additional issues beyond the scope of her complaint or the motion for summary judgment. These issues were unripe, having to do with remedies the defendant had not yet exercised. Additionally, pursuant to *Stern v. Marshall*, as common law causes of action, they were better suited to the state courts. The Court's decision to grant summary judgment in *Whitaker* thus provides little guidance in the instant proceeding. This adversary proceeding is a core matter pursuant to § 157(b)(2). As this is a Motion to Dismiss, the strength of evidence to support or contradict Trustee's claims is not considered. No issue of ripeness is present. Defendant cannot argue, based on *Whitaker*, that the complaint in this case should be dismissed.

█ If Defendant submits no claim against Debtor's estate, and if it properly files a demand for a jury trial, it will be entitled to a jury trial in this adversary proceeding. *Granfinanciera*, 492 U.S. at 36, 109 S.Ct. 2782. Defendant may, but need not, consent to that jury trial taking place before the bankruptcy court. Defendant states that it intends to demand a jury trial, and that it does not consent to a trial in this court. Any jury demand will not, however, entitle Defendant to dismissal of the complaint. Defendant has a constitutional right to determination of its case by a jury in the District Court, but not to pre-trial proceedings in that court, *see e.g. Development Specialists, Inc. v. Orrick, Herrington & Sutcliffe, LLP*, 2011 WL 6780600, at *4 (S.D.N.Y.2011). Pursuant to the Local Rules of this Court, an adversary proceeding is transferred to the District Court when the case is ready for trial. BLR 9015–3(a) (N.D.Ga.). Defendant's right to a jury trial does not, therefore, entitle it to dismissal of the case against it.

## IV. CONCLUSION

The bankruptcy court retains the constitutional power to enter final judgment in a fraudulent conveyance action, but even in the absence of such constitutional authority, the court has the power to hear such cases and present findings of fact and con-

clusions of law to the District Court. As provided in the local rules, if Defendant asserts a valid jury demand and does not consent to a jury trial before this court, this adversary proceeding will remain pending before this court until time for trial, when the reference will be withdrawn and the proceeding transferred to the United States District Court. Defendant is not entitled to have this adversary proceeding dismissed. Accordingly, it is hereby

ORDERED that the Motion to Dismiss is *denied.*

IT IS SO ORDERED.